UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 22-14006-CV-DIMITROULEAS

JEFFERY LORENZO HAYNES, Jr.,

    Plaintiff,

v.

JAMES VOLPELLETTO, *et al.*,

    Defendant.
_____/

## *AMENDED*[1] ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

This matter is before the Court on Defendant's Motion for Summary Judgment. (DE 84.) Plaintiff has several items in response to the motion. (DE 96, 104, 113, 115.)[2] Defendants have filed their reply. (DE 122, 123.) The matter is now ripe for disposition. For the reasons set forth below, Defendants' Motion for Summary Judgment is granted.

    **I.**    **INTRODUCTION AND PERTINENT PROCEDURAL HISTORY**

Plaintiff, **Jeffery Haynes,** *pro se* prisoner, is proceeding on a civil rights Complaint, pursuant to 42 U.S.C. § 1983. (DE 1). Procedurally, after Plaintiff was granted pauper status, the

---

[1] Based upon Plaintiff's March 15, 2023 Notice of Change of Address [DE-139] and Notice of Inquiry [DE-140], this order previously entered on March 12, 2023 [DE-138] is re-entered and sent to Plaintiff's new address.

[2] These documents include Plaintiff's Reply to Defendants' Statement of Uncontested Facts (DE 96); Plaintiff's Reply to Pretrial Stipulation (DE 104); Plaintiff's Opposition Response to Defendants' Statement of Uncontested Facts (DE 113); and Plaintiff's Motion for Appointment of Counsel and Brief in Support (DE 115).

Complaint was screened, in accordance with the Prison Litigation Reform Act ("PLRA"), an Order was entered permitting the case to proceed on Plaintiff's claims of unlawful use of force. (DE 9).

Plaintiff contends that Defendants beat him for no reason when he as an inmate at Martin Correctional Institution ("MCI"). According to Plaintiff he was sprayed with a chemical agent and beaten even though he was compliant with the orders of correctional officers. Defendants argue they applied reasonable force to restore order and are therefore entitled to qualified immunity. *Id.*

For its review, the court has considered the Complaint (DE 1), Defendant's Motion for Summary Judgment and Statement of Material Facts (DE 83, 84), the video recording submitted by Defendants (DE 95), Plaintiff's multiple responses (DE 96, 104, 113, 115)[3], and the Defendants' replies (DE 122, 123).

## II.  SUMMARY JUDGEMENT STANDARD

Pursuant to Fed. R. Civ. P. 56(a), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Grayson v. Warden, Comm'r, Ala. Dep't of Corr.,* 869 F.3d 1204, 1220 (11th Cir. 2017) (quoting *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986)). In reviewing a motion for summary judgment, the court must "view all of the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor." *Furcon v. Mail Centers Plus, LLC,* 843 F.3d 1295, 1304 (11th Cir. 2016) (quoting *FindWhat Investor Grp.*

---

[3] Plaintiff's sister filed a document with the Court on February 28, 2023. (DE 134) The Court has not considered this document; however, it is important to make one observation about this document. On Page 15 the sister alleges that Defendants Porteus and Merrill admitted to beating Plaintiff for seventeen minutes from 7:03 p.m. until 7:20 p.m. This allegation is clearly refuted by the record. The video recording covering that time frame shows that no such beating occurred.

*v. FindWhat.com,* 658 F.3d 1282, 1307 (11th Cir. 2011)). Thus, a district court "'may not weigh conflicting evidence or make credibility determinations'" when reviewing a motion for summary judgment. *Jones v. UPS Ground Freight,* 683 F.3d 1283, 1292 (11th Cir. 2012) (citing *FindWhat Investor Grp.,* 658 F.3d at 1307). As such, where the facts specifically averred by the non-moving party contradict facts specifically averred by the movant, the motion must be denied, assuming those facts involve a genuine issue of material fact. *Lujan v. Nat'l Wildlife Fed'n,* 497 U.S. 871, 888 (1990). However, "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris,* 550 U.S. 372, 380 (2007).

Because summary judgment is appropriate only if the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law[,]" *Great Am. All. Ins. Co. v. Anderson,* 847 F.3d 1327, 1331 (11th Cir. 2017) (quoting *Fed. R. Civ. P.* 56(a)), the moving party necessarily carries the burden. *Great Am. All. Ins. Co.,* 847 F.3d at 1331 (relying upon *Celotex,* 477 U.S. at 323). In meeting that burden, nonmoving parties may rely on materials enumerated in Fed. R. Civ. P. 56(c), meaning there are some materials that may be relied upon to avoid summary judgment even though they would not be admissible at trial. *Owen v. Wille,* 117 F.3d 1235, 1236 (11th Cir. 1997) (quoting *Celotex,* 477 U.S. at 324).

Issues are genuine if there is sufficient evidence for a reasonable jury to return a verdict for either party. *Great Am. All. Ins. Co.,* 847 F.3d at 1331 (relying upon *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986)). In a similar vein, "an issue is material if it may affect the outcome of the suit under governing law." *Great Am. All. Ins. Co.,* 847 F.3d at 1331 (relying upon *Anderson,*

3

477 U.S. at 248). However, a "mere scintilla of evidence" is insufficient "to create a genuine issue of material fact." *See Hinson v. Bias,* 927 F.3d 1103, 1116 (11th Cir. 2019) (quoting *Anderson,* 477 U.S. at 252). Instead, "the nonmoving party must present enough evidence to allow a jury to reasonably find in its favor." *Hinson,* 927 F.3d at 1116. The evidence must be sufficient "to allow a jury to reasonably find in its favor." *Hinson,* 927 F.3d at 1116 (citing *Anderson,* 477 U.S. at 252"). Plaintiff was advised that in contesting summary judgment, he could not rely solely on his complaint and other initial pleadings, but must respond with affidavits, depositions, or otherwise, to show that there are material issues of fact which require a trial. *Coleman v. Smith*, 828 F.2d 714, 717 (11th Cir. 1987)

At this stage, the evidence and all reasonable inferences from the evidence are viewed in the light most favorable to the Plaintiff as the nonmovant, but those inferences are drawn "only 'to the extent supportable by the record.'" *Penley v. Eslinger,* 605 F.3d 843, 848 (11th Cir. 2010) (quoting *Scott v. Harris,* 550 U.S. at 381, n.8).

### III. UNDISPUTED FACTS

Defendants have submitted a Statement of Undisputed Facts (DE 83). Plaintiff has filed a reply to the Defendants' statement. (DE 113). The undisputed facts presented here are based on these two filings as well as the Court's review of the video recordings of the incident.

Plaintiff was transferred to MCI on February 26, 2018. Prior to the incident Plaintiff had been diagnosed with psychological issues and had been prescribed medication. Plaintiff had no know medical risk factors relating to the use of chemical agents. The incident was captured by three fixed cameras.

The video recordings show two angles of the incident. The two outside video recordings are not synchronized as to the time stamps. The first recording appears to be time stamped approximately two minutes and fourteen seconds later than the third recording. In other words, actions occurring on recording one that coincide with the same actions observable in recording three are time stamped differently.

On recording three, which begins at 18:40:00, Plaintiff and two correctional officers can be seen in the upper right had corner outside a dormitory. One officer steps away from Plaintiff and can be seen raising an arm toward the direction of the Plaintiff. Plaintiff then runs around the other officer and flees from the two officers. The two officers begin to chase Plaintiff. The camera loses the parties as they run behind a building, depicted at 18:40:17. The parties come back into view at 18:40:20. The first recording captured the parties during this three second period at 18:42:31 to 18:42:34. During this three second period Plaintiff can be seen running at, and then past, a third officer. Both recordings capture the image of an officer having to tackle Plaintiff to stop his from fleeing the officers. Plaintiff is not visible in the first recording after the 18:42:38 mark. The third recording shows Plaintiff being taken to the ground at 18:40:24. Plaintiff, and the officers are partially visible until 18:44:13. During the first fifteen seconds Plaintiff can be seen struggling against the officers. It is difficult, if not impossible, to determine what actions occurred in the ensuing moments as the Plaintiff is only partially visible.

The next recording begins after Plaintiff has been taken inside in a wheelchair. It is unclear if the time stamps on the interior recordings are synchronized with either of the outdoor videos. The indoor videos commence as of 18:49:00. They depict Plaintiff's transit to a cell. At 18:49:48 Plaintiff is assisted out of the wheelchair and falls to the ground. An officer removes leg shackles,

and two officers then assist Plaintiff into a cell. Plaintiff remains in that cell until 19:04:06 when two officers remove him from the cell and escort him to another room. Plaintiff is not visible from 19:05:00 until 19:07:20 when he reemerges from the room. Plaintiff is then escorted back to another cell from 19:07:20 to 19:08:25, at which time he falls to his knees. Plaintiff remains on his knees and appears to be resisting the officers' attempts to remove leg shackles until the officers lower Plaintiff to the ground at 19:09:07. From that point until 19:09:50 one officer holds Plaintiff down while another officer removes the leg shackles. The two officers then assist Plaintiff to his feet and place him in a cell at 19:10:10. Plaintiff remains in the cell and can be heard cursing at the officers, until the conclusion of the recording at 19:16:00.

Immediately following the incident, Plaintiff was assessed by a nurse who was unable to provide care. (DE 83-30.) The nurse identified laceration to the left eyebrow, a left eye edema, and broken front tooth. (*Id*.) Plaintiff was transferred to Charlotte Correctional Institution ("CCI"). Plaintiff was taken to Bayfront Punta Gorda for emergency medical care. (DE 83-33). Plaintiff complained of left eye pain and headache with light sensitivity. (DE 83-33 at 7.) Based on the medical reports from Bayfront Punta Gorda Plaintiff was merely evaluated. The medical care provider noted a superficial contusion of the forehead and left eye. (*Id*. at 11.) There was no signs of skull fracture and Plaintiff presented no other symptoms or injuries. (*Id*. at 11-12.) The discharge documents indicate Plaintiff was treated for an eye contusion and advised to use cool compresses and take over the counter medication for swelling.

Plaintiff returned to CCI after being discharged from Bayfront Punta Gorda. On May 19, 2018, he was provided ibuprofen for left eye swelling. He also received ibuprofen on the 20th and 21st. There is no further record of Plaintiff requiring, requesting, or receiving treatment for any

6

injury sustained during the May 17, 2018 incident at MCI. The records indicate that Bayfront Punta Gorda suggested that Plaintiff should be seen by a doctor if needed, but no such follow-up is reflected in the record. The records submitted by Defendants show that Plaintiff made requests for medical issues that were unrelated to any injury from May 17, 2018. (DE 83-35.) A wellness check on August 13, 2018, four months after the incident, reflects no injuries and no complaints of injuries. (DE 83-37.)

## IV.    LEGAL ANALYSIS AND DISCUSSION

Plaintiff alleges the Defendant used excessive force in when he was allegedly beaten on May 17, 2018 at MCI. this claim is governed by the Eighth Amendment to the U.S. Constitution which governs prison officials' use of force against convicted inmates. *Campbell v. Sikes*, 169 F.3d 1353, 1374 (11th Cir. 1999). "Under the Eighth Amendment, force is legitimate in a custodial setting as long as it is 'applied in a good faith effort to maintain or restore discipline [and not] maliciously and sadistically for the very purpose of causing harm." *Stallworth v. Tyson,* 578 F. App'x 948, 952 (11th Cir. 2014) (per curiam); *see Wilkins v. Gaddy*, 559 U.S. 34, 37 (2010).

Factors to consider when determining whether the use of force was "malicious" or "sadistic" include: "(1) the extent of the injury; (2) the need for application of force; (3) the relationship between that need and the amount of force used; (4) any efforts made to temper the severity of a forceful response; and (5) the extent of the threat to the safety of staff and inmates, as reasonably perceived by the responsible officials on the basis of facts known to them." *Stallworth v. Tyson,* 578 F. App'x. at 953(citing *Campbell v. Sikes,* 169 F.3d 1353, 1375 (11th Cir. 1999). The court gives "deference to prison officials acting to preserve discipline and security, including when considering decisions made at the scene of a disturbance." *Stallworth v. Tyson*, 578 F. App'x.

7

at 953 (quoting *Fennell v. Gilstrap,* 559 F.3d 1212, 1217 (11th Cir. 2009) (per curiam). The "focus of the Eighth Amendment inquiry is on the nature of the force applied, rather than the extent of injury inflicted." *Id*. (citing *Wilkins v. Gaddy,* 559 U.S. 34, 39 (2010).

"[C]orrections officials must make their decisions in haste, under pressure, and frequently without the luxury of a second chance." *Hudson v. McMillian*, 503 U.S. 5, 6 (1992) (quotation marks omitted). Thus, "courts must determine whether the evidence goes beyond a mere dispute over the reasonableness of a particular use of force or the existence of arguably superior alternatives." *Whitley v. Albers*, 475 U.S. 312, 322(1986). A court gives "a wide range of deference to prison officials acting to preserve discipline and security." *Sears v. Roberts*, 922 F.3d 1199, 1205 (11th Cir. 2019) (quotation marks omitted). "Unless it appears that the evidence, viewed in the light most favorable to the plaintiff, will support a reliable inference of wantonness in the infliction of pain . . . the case should not go to the jury." *Whitley*, 475 U.S. at 322.

A defendant need not participate in the use of excessive force against a prisoner to be held liable under § 1983 for cruel and unusual punishment. *See Skrtich v. Thornton*, 280 F.3d 1295, 1301 (11th Cir. 2002). A defendant "who is present at the scene and who fails to take reasonable steps to protect the victim of another officer's use of excessive force can be held personally liable." *Id*.

The Defendant alleges he is entitled to qualified immunity. The defense "is founded on the presumption governmental officials know and respect 'basic, unquestioned constitutional rights,' measured by clearly established law." *See Stephens*, 852 F.2d at 1314 (11th Cir. 2017) (citing *Harlow* 457 U.S. at 815). The defense "shields government officials from liability for civil damages for torts committed while performing discretionary duties unless their conduct violates a

8

clearly established statutory or constitutional right." *See Stephens,* 852 F.3d at 1314 (quoting *Hadley,* 526 F.3d at 1329).

For the defense to apply, "a government official first must show that he was performing a discretionary function at the time the alleged violation of federal law occurred." *See Glover,* 225 F. App'x at 784 (citing *Crosby v. Monroe Cty.,* 394 F.3d 1328, 1332 (11th Cir. 2004)). The constitutional right must be sufficiently clear for a reasonable official to understand what he or she is doing violates that right. *Glover,* 225 F. App'x at 784 (citing *Crosby,* 394 F.3d at 1332); *Hope v. Pelzer,* 536 U.S. 730, 739 (2002).

Once this showing has been made, the burden shifts to the Plaintiff to demonstrate that: "(1) the facts show that the defendants violated a constitutional right, and (2) the right was clearly established at the time of the defendants' alleged misconduct." *See Stone v. Hendry,* 785 F. App'x 763, *3 (citing *Saucier v. Katz,* 533 U.S. 194, 201 (2001)); *Pearson v. Callahan,* 555 U.S. 223, 232 (2009). The focus is thus on whether the law on the date of the excessive force in question gave the officials "fair warning that their alleged treatment of [the plaintiff] was unconstitutional." *See Stephens,* 852 F.3d at 1314 (citing *Hope,* 536 U.S. at 741). "The basic constitutional law governing excessive force in arrest situations was well established" before Plaintiff's arrest. *See Stephens,* 852 F.3d at 1314.

In permitting this Complaint to proceed beyond the screening phase, the Court found the following had been alleged by Plaintiff:

> On May 17, 2018, Plaintiff encountered Officer Maria Avant who asked Plaintiff "Why do you act like you know me?" (DE 1 at 3). Plaintiff responded by saying "Get out of my face" because Avant had "encroached into Plaintiff's personal space." *Id*. Avant then threw a punch at Plaintiff and stated, "I'm going to have you killed." *Id*. Avant went into an officer station and Sergeant Garlobo ran up to Plaintiff and applied chemical agents into his face without warning or commands.

9

>*Id*. Officer Short then slammed Plaintiff to the ground and Plaintiff submitted to hand restraints. *Id*. Defendants Volpelletto, Babcock, Foster, Merrill, Porteaus, Short and Scarpati then arrived at the scene. *Id*. Garlobo restrained Plaintiff by sitting on his back while handcuffed and in a prone position. *Id*. at 4. Short, Porteaus, Volpelletto, Babcock, Foster and Merrill began kicking Plaintiff and beating him with their radios. *Id*. Captain Scarpati did not hit Plaintiff but did nothing to intervene. *Id*. Plaintiff alleges that the was compliant with commands and presented no threat. *Id*. at 6. The Plaintiff was beaten until he was unconscious and sat in hand restraints for approximately twenty minutes. *Id*. He was then placed in a confinement cell and later transferred to Charlotte Correctional Institution. *Id*.
>   He received medical attention the next day at Charlotte Correctional Institution. *Id*. at 4-5.
>Due to the severity of his injuries, Plaintiff was taken to an outside hospital. *Id*. at 5. An MRI was taken of Plaintiff's left eye. *Id*. Plaintiff has sustained permanent injuries to his face. *Id*.

(DE 9.) After reviewing the video recordings, medical records and determining the undisputed facts it has become clear that the allegations in the Complaint were at best an exaggeration of the actual facts surrounding the incident. It is well settled that "[the] court need not permit a case to go to a jury ... when the inferences that are drawn from the evidence, and upon which the nonmovant relies, are 'implausible.'" *Mize v. Jefferson City Bd. of Educ.*, 93 F.3d 739, 743 (11th Cir. 1996).

To begin with, Plaintiff's allegation that Officer Short simply slammed him to the ground is completely refuted by the video recording of the incident. Plaintiff's allegations would lead the Court to believe that Short, for no reason, threw Plaintiff to the ground. However, the recording clearly shows that Plaintiff was in full flight from pursuing officers when he was tackled to the ground by one of the officers. Next, Plaintiff alleged that he immediately submitted to hand restraints. However, the recording shows that Plaintiff did not immediately submit to restraints and was struggling with correctional officers. Although the recording does not capture the entire incident, what is shown completely contradicts Plaintiff's version of events as alleged in the

10

Complaint. Although Plaintiff alleged he was beaten unconscious, there is no indication of that in the record. The recording shows Plaintiff being escorted to a cell in a wheelchair and later taken for decontamination and examination by a nurse. Contrary to Plaintiff's claim that he was compliant with officers' directions, the recording shows that Plaintiff was actively resistant to officers attempts to remove leg shackles and that he had to be put on the ground for the officers to remove the shackles and place him back in an uncontaminated cell. The officers did this in a calm and controlled manner. Plaintiff continued to scream at the officers for at least six more minutes, until the recording ends.

In determining whether the Defendants violated the Eighth Amendment using excessive force, the Court must consider whether the applicate of force was done "in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Wilkins*, 559 U.S. at 37. Here the undisputed facts show that the Defendants applied force to restrain Plaintiff after he defied officers' directions. Plaintiff, an inmate, was in full flight from officers in an area occupied by several other inmates. Plaintiff evaded one officer and was tackled as he fled. Plaintiff was not simply slammed to the ground. Plaintiff was actively resisting officers attempts to control him, not compliant as he alleged. Thus, the officers use of force was clearly done to maintain or restore discipline rather than maliciously or sadistically to cause harm. This conclusion is further supported by the fact that Defendants immediately provided decontamination and had a nurse available to assess Plaintiff's condition, hardly the actions of individuals who wished to maliciously inflict harm.

Although the extent of the injury is not a controlling factor in determining if the amount of force used was justified, "the extent of injury may provide some indication of the amount of force

applied." *Wilkins*, 559 at 37. Here, the extent of Plaintiff's injuries, as reflected in the independent medical report from Bayfront Punta Gorda, were a contusion and a loose tooth which could be treated with a cold compress and over the counter anti-inflammatory medication. There is no evidence that Plaintiff sought additional medical care or complained of long-term injuries. These minimal injuries do not reflect the type of injuries one would expect based on Plaintiff's allegations but do reflect the type of injuries one might expect from the measured use of force to restore order or discipline.

The facts asserted by Plaintiff have been refuted by the record presented by the Defendants. Although the two sides present somewhat conflicting stories the Plaintiff's story is refuted by the record. Under these circumstances the Court need not adopt Plaintiff's version of events. *See Scott v. Harris*, 550 U.S. 372, 380 (2007) ("When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment."). Because the undisputed facts establish that the Defendants use of force was done to restore order rather than to cause harm the Court finds that the Defendants did not violate Plaintiff's Eighth Amendment rights. In the absence of a violation of Plaintiff's constitutional rights the Defendants' Motion for Summary Judgment will be granted.

## V.  CONCLUSION

Based upon the foregoing, it is **ORDERED AND ADJUDGED** as follows that:

1. Defendant's Motion for Summary Judgment [DE 84] is **GRANTED.**
2. Plaintiff's Motion to Appoint Counsel [DE 115] is **DENIED** as moot.
3. The Clerk is directed to **CLOSE** this case.

4.     The Clerk shall mail a copy of the order to the Plaintiff.

**DONE AND ORDERED** in Chambers at Fort Lauderdale, Broward County, Florida, this 23rd day of March 2023.

*[Signature]*
WILLIAM P. DIMITROULEAS
United States District Judge

cc:
Jeffery Lorenzo Haynes, Jr.
K72806
Charlotte Corr. Inst.
Inmate Mail/Parcels
33123 Oil Well Road
Punta Gorda, FL  33955
PRO SE

Counsel of Record